IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BEVERLY A. MERCHANT<br><br>Debtor. | Chapter 7<br><br>Case No. 20-10989 (LSS)<br><br>**Related to Docket No. 40** |

## MEMORANDUM

On February 3, 2023, the Trustee in this chapter 7 case filed the *Motion of George L. Miller, Chapter 7 Trustee, for the Entry of an Order (I) Authorizing Sale of Certain Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bank. P. 6004, and (II) for Approval of Compromise with Co-Owners Pursuant to Bankruptcy Rule 9019* [Docket No. 40] ("Motion"). Beverly A. Merchant ("Debtor") filed her Objection[1] on February 7, 2023. By the Objection, Debtor did not object to the sale of the property at issue or the purchase price, rather, Debtor raised her entitlement to an exemption of $18,944.60 per 10 Del.C. § 4914(b) and questioned the distribution of funds coming into the estate. The hearing was scheduled for February 16, 2023. Given the nature of the Objection, it was not contemplated that the hearing would be evidentiary and so it was conducted remotely. Nonetheless, as the hearing progressed, testimony became necessary. The only witness at the hearing was the Trustee. Based on Mr. Miller's testimony and certain uncontested facts from the docket, I find the following.

---

[1] Objection to *Motion of George L. Miller, Chapter 7 Trustee, for the Entry of an Order (I) Authorizing Sale of Certain Property of the Estate Free and Clear of Liens, Claims, Encumbrances, and Interests Pursuant to 11 U.S.C. § 363(b) and Fed. R. Bank. P. 6004, and (II) for Approval of Compromise with Co-Owners Pursuant to Bankruptcy Rule 9019* ("Objection").

**FINDINGS**

Debtor filed a voluntary petition under chapter 7 on April 22, 2020. Debtor's primary asset is a 24.5% interest in that certain real property at 41 Commerce Street, Harrington, Delaware 19952 ("Property").[2] Richard and Gina Kratsas (the "Co-Owners") own the other 75.5% interest in the Property. The Trustee has made efforts since the commencement of the case to obtain information on the Property from the Co-Owners, including information regarding tenants and rental payments. The Co-Owners were uncooperative at first, which necessitated the filing of a Rule 2004 motion to compel production of documents and deposition testimony as well as a motion for contempt.[3] Only after these motions did the Co-Owners obtain counsel and provide certain information to the Trustee.

The Trustee consulted with a broker from Emory-Hill with respect to the Property, but the broker was unwilling to take the listing. The Trustee believes that there are currently both commercial and residential tenants in the Property, but is uncertain if they are paying any rent. The Trustee has not received any rental income from the Property for the past two years.

The Trustee and the Co-Owners have come to an arrangement to sell the Property. By the Motion, the Trustee proposes to sell the Property to Blue Hen Homes, LLC ("Purchaser"). Purchaser is not related to either Debtor or the Co-Owners. The Contract of Purchase and Sale was attached to the Motion.[4] Per the Contract of Purchase and Sale, the Purchase Price is

---

[2] It is unclear whether Debtor's interest in the Property is 23.5% or 24.5%. For purposes of this ruling, I am favoring Debtor.
[3] Chapter 7 Trustee's Motion for an Order Compelling the Production of Documents by and Examination Under Oath of Richard and Gina Kratsis Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Bankruptcy Rule 2004-1 (Dkt. No. 20); Motion of George L. Miller, Chapter 7 Trustee of Beverly A. Merchant, to Compel Compliance with the April 4, 2022 Rule 2004 Order and for an Order of Contempt (Dkt. No. 26).
[4] While the Contract of Purchase and Sale was not moved into evidence, as both the Trustee and Debtor (through counsel) were somewhat loose with the actual terms of sale, I find it best to rely on the written contract.

$450,000 payable $120,000 in cash at closing and $330,000 in purchase money financing extended by the Co-Owners. Transfer taxes are to be split equally between the sellers and the Purchaser. Sellers are to pay for deed preparation. Taxes, special assessments, water, sewer, and other fixed charges are to be prorated as of the date of settlement. The purchase money financing will be at 7% interest payable over 20 years.

The Trustee and the Co-Owners have further agreed that the Trustee will receive $70,000 in cash upon the closing of the sale and the Co-Owners will receive the remaining cash and the proceeds of the purchase money financing. Simple math reflects that if the purchase price of $450,000 were divided per the respective interests of Debtor and the Co-Owners, the estate would be entitled to $110,250 and the Co-Owners would be entitled to $339,750.00 (all before costs allocated to sellers at closing). Simple math also reflects that if the cash at closing were divided per the respective interests of Debtor and the Co-Owners, the estate would be entitled to $29,400 and the Co-Owners would be entitled to $90,600 (again, all before costs allocated to sellers at closing).

The Trustee has determined in his business judgment that this sale and the compromise embodied in the division of the sale proceeds is best for the estate, the creditors and Debtor. He testified, "cash is king." Against the proceeds of any sale, Debtor will receive her exempt amount of $18,944.60, the trustee fee and administrative expenses will need to be paid, and a dividend will be paid to unsecured creditors who have filed claims in this case of approximately $38,000. The Trustee calculated (roughly) that if he were to keep the case open for 20 years (to share in the purchase money financing),[5] Debtor's share of the additional sales proceeds would be approximately $9,000, but further administrative expenses would accrue, including an

---

[5] Debtor's counsel stated at argument that he did not believe Debtor would agree to payment over time.

3

approximately $80-$90 per month bank fee assessment as well as clerical/monitoring fees. There is also a risk of default/non-payment over the twenty year duration of the financing.

As part of the compromise with the Co-Owners and the Co-Owners' willingness to permit the Trustee to receive more of the up-front cash than Debtor would otherwise be entitled to, the Trustee has agreed to waive any claims that he has against the Co-Owners for sanctions, as previously requested.

The sale and the compromise will permit the Trustee to expeditiously close the case.

**Discussion**

I conclude that the Trustee's assessment in this case is reasonable in the circumstances and that the sale and compromise meets the applicable standards. The court may approve a sale under section 363 of the Bankruptcy Code if there is a sound business purpose for the sale, reasonable notice of the sale, a reasonable price and good faith negotiations with the purchaser. *See In re Abbotts Dairies*, 788 F.2d 143, 147 (3d Cir. 1986). Approval of a compromise is appropriate if the agreement falls above the lowest rung on the ladder of possible settlements. *See In re Martin*, 91 F.3d 389, 393 (3d Cir. 1996). Given the co-ownership of the Property, the sale and compromise are intertwined.

The Trustee did not market the Property through a real estate broker, but the Property has been available for sale for over two years. A real estate broker was unwilling to market the Property, which indicates that there are some issues with the Property, including the existence of current tenants. The Trustee has not received other offers for the Property and Debtor has not come forward with anyone willing to make a higher offer. There is no evidence to suggest that the negotiations with the Purchaser were anything but in good faith and at arms-length. Further, the compromise with the Co-Owners brings money into the estate immediately. The Co-Owners

bear the risk of default/non-payment under the purchaser money financing, which extends over a 20 year period.

Debtor suggests that the Property might obtain a greater value if listed with a broker, that tenants could be evicted and/or that a partition application could be brought in the Court of Chancery to sell the Property. But, these arguments just highlight the reasonableness of the sale and the compromise, which will permit the Trustee (and the estate) to avoid future litigation expense with uncooperative Co-Owners that will delay the sale. Under these circumstances, which requires a consensual sale or partition litigation, the sale and settlement are approved.

A separate order will enter.

Dated: February 17, 2023

*[signature]*
Laurie Selber Silverstein
United States Bankruptcy Judge